## CITY OF MEMPHIS *v.* MEMPHIS WATER CO.

MUNICIPAL CORPORATION. *Charter. Contracts. Privilege.* By its charter the Memphis Water Co. had the exclusive privilege of furnishing water to that city and its inhabitants, and in consideration of such privilege it was obliged to supply free of charge water for hospitals, offices, extinguishment of fires, etc. The City Council of Memphis, however, entered into a contract with said company by which the city was made to subscribe for 1,000 shares of the company's stock, and agreed to rent for 20 years a certain number of hydrants, paying therefor the sum of $40,000 per annum. (No charge is presumed to have been made for the water *per se.*) *Held*, that the city council had no authority to make such a contract, imposing burdens upon the citizens, provided against in the charter of the water company, and is therefore void.

### FROM SHELBY.

No record found.

TURNEY, J., delivered the opinion of the court.

By sec. 4 of the charter of the Memphis Water Co., it is provided, "Said company shall be and is hereby authorized to establish and construct works in and adjacent to the city of Memphis, in this State, and to supply the said city and the inhabitants thereof with a plentiful supply of water, and for this purpose they are hereby authorized and empowered, and invested with the exclusive privilege, to lay down pipes and to extend aqueducts and conductors through all or any of the streets, lanes and alleys of the city of

Memphis, and to supply the inhabitants of said city with water by public works," etc.

Sec. 8 provides, "The stock of the company shall be paid upon such calls as the president and directors may prescribe. . . . . . . The company shall have no power to release stockholders from the paymunt of their stock to the prejudice of creditors.

"Sec. 10. Said company shall furnish water to the city of Memphis sufficient to supply the public offices, police stations, hospitals, and engine house, and for extinguishing fires, free of charge."

On the 18th of January, 1872, the city and water company entered into a contract by which the city subscribed for 1,000 shares, aggregating $100,000, and being one-half the capital stock of the company, the company to issue to the city a certificate showing that the amount subscribed had been fully paid for. The subscription has not in fact been paid, nor any part of it.

The city undertook to rent from the company not less than twelve fire hydrants on an average for each mile of mains or main pipes that may be laid down, and as many more as the city, by its general council, may require, the renting to be for twenty years, and at prices indicated in the contract, to be paid at the end of each six months. The character and capacity of the hydrants are definitely prescribed.

Other parts of the charter and contract have been referred to and commented upon in argument, but in

our view it is unnecessary to notice them in this opinion.

The first inquiry is, was the contract on the part of the city for corporation purpose in contemplation of the water company's charter? We think not. As already shown, that company had the exclusive privilege of furnishing water to the city by public works, and in consideration for such privilege it was obligated to furnish free of charge water for offices, hospitals, extinguishment of fires, etc. This condition was for the benefit of the city, and intended to free its citizens from a taxation otherwise devolving upon them. The corporate authorities of the city have no power other than that which is for the protection of the city and the good of its inhabitants. By the express terms of the charter of the water company, the city is prohibited from supplying itself and citizens with water by public works (and water could be supplied in no other way).

By the subscription of stock the corporate authorities have undertaken to make the city liable for the debts and contracts of the company, and to subject the citizens to the payment of taxes for the purpose of discharging such debts and contracts. If there had been by the charter no inhibition upon the city to supply water, but that natural duty had been left still imposed on the officers of the city corporation, then, as in the Gayoso Gas Co. case, decided at the last term, the city might, for such necessary corporation purpose, have contracted for the supply of water.

Here we have a company paid in a valuable privi-

lege for a supply of water, and the city in turn made dependent upon the company for that supply. By this contract there is an attempt to do indirectly what may not be done directly.

It is the duty of the company to furnish the water, and the right of the city to use it, however it may be furnished, and wherever it may be found.

While the contract itself and counsel for the water company attempt to make the undertaking appear only for the renting of hydrants, yet it is clearly apparent from the entire record that there is the purpose to secure a very liberal compensation for that which the charter provides shall be done free of charge and in consideration of an exclusive privilege. Without more, the very extravagant and exorbitant prices for the use of hydrants, aggregating $30,000 or $40,000 per year, uncover the purpose ingeniously attempted to be concealed.

The contract is without authority in the city authorities to make it, imposing burdens on the citizens provided against in the charter of the water company, and is therefore void.

This is conclusive of the case, and we deem it unnecessary to consider other questions presented by the record and in argument.

Reverse the judgment.